We'll proceed with the day calendar for this morning. The first case is Shen v. New York. Ready to proceed? Just give us one second. Okay, go right ahead. Good morning, Your Honors. My name is Nathan Dershowitz, and I represent Mr. Zimming Shen. This appeal presents one overarching issue, which impacts virtually all of the other issues. When considering a motion for a summary judgment, the court must consider the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor. The trial court here not only disregarded this requirement, it cherry-picked facts never advanced by the other side as being uncontested, and it disregarded specific provisions in the 56-1 statements and others that contradicted the conclusions the court wanted to reach. Why do you think there wasn't a probable cause to arrest your client? Well, I think specifically with respect to the probable cause, what you needed to do when you have two people, one of whom is a victim, by the way, the court was wrong with respect to the 911. The first 911 call came from somebody who said that the cameraman is beating the guy on the floor. Okay. So when you have that information and you have a witness and you have two people contesting it, and one is clearly injured, there's an obligation to at least inquire from the people around, as opposed to simply making the flippant judgment I'm going to arrest the man on the floor because I can't speak to him and not arrest the person who's standing up there. So the question is what do you do with this? Shapiro was injured, too, though, right? Shapiro had a bloody nose and his camera was broken, too, right? That's correct. But the bloody nose may well have been, from what the witnesses had indicated, from Shapiro himself, from swinging the camera around and hitting him in the face. But the core question, Your Honor, the core issue throughout this, is the court never looked at the evidence in the light most favorable to the nonmoving party and came to conclusions that were just grossly inappropriate factually. Let me give you two or three quick examples. The first one is throughout the decision, pages 19 and 20, the court says the following three or four different times, that there's no record evidence that the officers who handcuffed Plaintiff had reason to know that their accommodation led to an unreasonable exacerbation of Plaintiff's pain. Why did they put the double handcuffs on him? Wasn't it because he said his shoulder hurt? Wasn't that to why would you put double handcuffs on somebody unless you were the police officer thinking, I don't want to inflict more pain? What's the purpose of the double handcuffs? And the answer is that demonstrates that they knew that he was injured. Then the question comes up, is that a reasonable accommodation when you have four factors, when you have someone who's not protesting, who's not in any way a threat? We're talking about an excessive force claim. Excessive force claim. He's complaining of shoulder injury, and they say, well, let's double handcuff him so we're not pulling his hand. That's a question for the jury. It's a reasonable — How many cases do you have where handcuffing someone was deemed excessive force? Many. Let me give you the main case, and let me quote it to you. You don't need to quote it to me. Just give it to me because I don't see any. The leading case, there's a case that's out of the Sixth Circuit that says this — Why don't you be a little more parochial and stick to the Second Circuit? Okay. Because the Sixth Circuit says this court and other courts — I told you to stick to the Sixth Circuit. I told you to stick to the Second Circuit. Correct. There are half a dozen at least district court decisions within this circuit holding that that's a jury question. Handcuffing. Handcuffing. At least — How about handcuffing where they extend the handcuffs to accommodate his complaint about his shoulder? Your Honor, the Supreme Court has made it clear that you don't have to find a case directly on point. That's what it says in Molyneux. What you do is you take the general principle. The general principle is that if you know someone is hurt, you don't have a risk of flight or any danger to anybody around, you have to make an accommodation. What the accommodation is is for the jury. It's a question of reasonableness. So when the officers approached your client, he was prone, is that right? Was he on the ground? He was on the ground. He had been unconscious for a period of time. They approached him. One of them tries to speak to him. They say, we don't understand him. And that's the end of it. Now, again, bear in mind the first call that came in, contrary to the Court's factual findings, the Court is just wrong. It cites the references that it is wrong, that the first call that came in was somebody saying that the male on the ground was being beaten by the photographer, by the cameraman. So it's just that she made up facts. That's part of the problem here. Did Mr. Epps even say, though, that he pushed first, that your client pushed first in her deposition? If you read her deposition, as opposed to the Court's description of her deposition, what she has said is in self-defense, in self-defense. He's holding this up. Never hit, never hit Shapiro. Again, Your Honor, with all due respect, the decision has, throughout the decision, throughout the decision, she violates the fundamental principles. Let me give you another example. She says that Officer Moya reached out to the good arm to pull him up. Says it's uncontrovertible. She doesn't tell us what is uncontrovertible, where she concludes it's uncontrovertible. The only thing I can think of is that there's a photograph. The photograph is reaching out, doesn't show him being pulled up. Moya, Merez, and the defendant all testify that at least two people lifted him up. That's the testimony in the record. Two officers lifted him up. One, a different officer, a third one, Nunez, says, and I was holding his arm when they cuffed him. Now, if you draw inferences in favor, as you have to, of course a jury can conclude, contrary to what the court said, that he was pulled up by his injured arm. That's an inference. It's a logical inference that can be drawn, which the court should have drawn under the circumstances. Let me just spend one minute, just a bullet point on some of the claims with respect to Shapiro. Now that it's clear that the malicious prosecution is not time-barred, and everybody concedes it's not time-barred, if a civilian makes false reports to the police, knowingly false reports, as we claim that Shapiro did, there's a cause of action. And also with respect to this— Knowingly false reports you think he made? He said that I was attacked. He said that Shen hit him. He continued to say that. When the evidence is all from the objective reporters, the objective reporters who were around— Are you talking about the woman and the man who was in the bodega? That's right. Was there a surveillance film? Nobody checked. Pardon me? Nobody checked whether there was a surveillance film. Okay. But talking about Mr. Hussein— The picture made in the New York Times. I'm sorry? Pictures of your client made in the New York Times. Well, it was in a different one. Struggling with the photographer. Remember, that's two blocks away. Well, that's not him in the picture? No, no. What happens is he walks out of the court. Struggling with the same photographer. He walks out of court. There are pictures taken. He's doing this defensive stuff. Then he gets into a strap-wrap, and then he walks two blocks away to Tillery Street. Blocks away, and he's chased by Shapiro. Just on a sort of a personal note, walking out of the court, you know there are photographers here. And I've actually walked into court one time bleeding from the photographers. They're there. But walking two blocks away, you don't expect the photographer to trail you, to make all these derogatory claims, calling you names, all the rest, trying to get the pictures. That's a different situation. We reserved a couple minutes. Okay. But we'll hear from you again. Thank you. Ms. Fillo? Is that right? Mackenzie Fillo for the City Defendants? Yeah. That's your name, right? Yes, Mackenzie Fillo. Yes. I'm here to ask you to affirm summary judgment for the City Defendants because the officers had probable cause to believe that Shen could be prosecuted, and they acted reasonably in using two sets of handcuffs on him. At best, even giving Mr. Shen every benefit of the doubt, the evidence at best shows that the police could have also arrested Shapiro. It does not show that they did not have probable cause. You and I are reading different records. The evidence showed that at the time of the arrest, this officer knew from a disinterested bystander witness that Mr. Shen had not been the aggressor, and that was just ignored. And when he went down to the station and wrote up the report and processed this, that was ignored. He had the 9-11 call, which should have pointed any reasonable officer in a different direction. He ignored all of this and just for reasons which the record doesn't establish, arrested Mr. Shen and put him through two years of prosecution before the case went away because Shapiro apparently had lost interest in him. That's the record I'm reading. Well, actually, Ms. Krebs did not see the entire incident. She only saw part of the incident. She saw more than anybody else who talked to Abramowitz, Aronowitz. Nothing that Ms. Krebs said contradicted the photographer's assertion that Mr. Shen came out of the courthouse and tried to kick them. There's no evidence contradicting that. No evidence was ever presented to the police that Mr. Shen did not do that, and, in fact, he admitted that he did that. They had probable cause to arrest him, at least related to the charges related to the attack outside the courthouse. Also, Ms. Krebs said to the officer that she wasn't sure if the photographer had committed a crime but that she thought he had provoked Mr. Shen. So there's just no reason to believe that any information Ms. Krebs provided gave the police reason to believe that Shapiro was lying. Furthermore, there are a lot of cases saying that the police are not required to immediately resolve fact disputes or to figure out who is lying when there's different stories. Maybe they could have arrested both of them, but they had, for sure, probable cause to arrest Mr. Shen. But they continued with the prosecution. When did they first—I mean, they continued with the prosecution even after they had had evidence contradicting their off-the-cuff, off-the-top-of-their-head conclusion. Well, okay, so there's no evidence that the police, especially at the time they were making the decision about who to charge, that they had access to the 911 call. I'm not sure exactly how long those things take to get processed. At some point, obviously— They showed up. They showed up because of the 911 call. Right, so someone— That's certainly a reasonable—that's the most reasonable inference. 911 calls isn't directly to the officers. It's to an operator who then dispatches officers— Exactly. —who then assess the situation at the scene. And once the officers have laid the information against— they laid a criminal complaint information against Mr. Shen, is that it? Right, so then— They have nothing to do with the continued process. The police had nothing to do with this after—perhaps the day after the arrest. And I will also note there's no false arrest claim here. So their complaint against them is for false arrest, not malicious prosecution. Exactly. There's no false arrest claim here. There's only a state law false arrest claim, which is barred by the statute of limitations. The complaint does not contain a federal false arrest claim. So this is just about the prosecution. The police did not sign the criminal complaint. They sent the victim's statements to the district attorney. The district attorney is not a named defendant here. So the district attorney's decision, based on the complainant's statements— I mean, malicious prosecution with regard to a prosecutor has to be where the prosecutor is aware that the information is false, that he receives from our case law, receives from the prosecutor's false, and then decides to disregard that and continue the prosecution, notwithstanding clear information to the contrary. Right. And no one here had clear information to the contrary to dispute the photographer's assertions about Mr. Shen's behavior. And, in fact, Mr. Shen admits most of it, frankly. I mean, he admits that he tried to hit Mr. Shapiro with a cardboard box. He admits that he moved his leg from low to high outside the courthouse. There's really—the court was correct that probable cause existed to charge Mr. Shen with the crimes. Whether the police could also have charged Mr. Shapiro is, frankly, irrelevant to that determination. Turning to the excessive force claim, I would just like to dispute the assertion that there's some evidence showing that the police yanked Mr. Shen up by his injured arm. In fact, on page 724 of the appendix, Mr. Shen testified that he was lifted from below his armpits. He was not—he did not say that they jerked him up by his injured arm. In any event, it is not—it is not—it is objectively reasonable to use two sets of cuffs on a person who says that they have an injured shoulder. The police are not doctors. They didn't know for sure how hurt he was. People say they're hurt all the time. They talked to their supervisor. They said he says his arm hurts. The supervisor said, use two sets of cuffs. That's what they did. He was cuffed only briefly, and that is not a constitutional violation. And certainly, it was reasonable enough to entitle the officers to qualified immunity. Now, what about Dr. Shapiro's report? I know there's a question about whether it should have been considered because it was late filed. But did Dr. Shapiro find that some of the injury was caused by the backhand cuffing? No, he said that the cuffing would have caused pain. He didn't say any injury. All the injuries were caused by the fight, not by the handcuffing. The Shapiro affidavit, I believe, says that it would have caused additional pain. And maybe it did cause additional pain, but they—again, they're not doctors. They didn't know how hurt he was. He said he was hurt. They tried to accommodate him. He was cuffed only briefly. The cuffs were taken off in the ambulance. They were taken off once he got to the hospital. The police officers acted reasonably here. If there are no further questions, we'd ask that you affirm. Thank you. Thank you. And then we have Ms. Filiberte. Good morning. Good morning. Defendant Shapiro and Burnett also ask that the lower court's order be affirmed. The plaintiff failed to meet the elements on any of his causes of action, voluntarily discontinued many of them for statute of limitation violations, and failed to— Do you agree, though, that the statute of limitations was wrong as to the federal malicious prosecution? No, Your Honor. We did not argue a statute of limitations issue on that. We did argue that on the elements and would ask this court on de novo review to review the elements to see that plaintiff failed to establish any facts to meet the elements to proceed on a claim for malicious prosecution. Simply put, the first element requires that the plaintiff has to establish evidence that the defendant somehow initiated the complaint. Initiation is more than just filing a complaint. There has to be something happening that caused and interfered with the professional judgment of the police officers making the arrest. There's no evidence that Mr. Shapiro or Mr. Burnett at any time improtuned or encouraged the police to arrest Mr. Shen. They made their complaint. They gave their statements. The police who arrived on the scene exercised the professional judgment and made an arrest. The fact that— Well, Your Honor, even if you assume the statements were false, of which there was no evidence in contradiction to those statements given, plaintiff asserts that the statements were false, but there's nothing pointed to in the record. There was a fight. There's no dispute. There was a witness who saw the incident who gave a different version? There's a controversy over who initiated the fight and who started the fight. There's no controversy that there was a fight, that two men were injured in the fight. When the police arrived on the scene, Mr. Shapiro was bleeding from the nose. He had made a 911 call. The other man was lying on the ground with a broken shoulder. It doesn't vitiate the probable cause to arrest Mr. Shen. If there might have been— Is it a coin toss about who gets arrested? The officers on the scene aren't tasked with saying, you know, what happened? How did you get on the floor? How did you get a bloody nose before they arrested somebody and charged them with a serious crime? The officers are free to exercise their professional judgment. What's key here is that my clients do not interfere with their ability to exercise their professional judgment, and that goes to the first element. Even if— What about a false report? How can you—that interferes with it. If you look at the complaint— If I go to the police and lie about what happened, doesn't that interfere with the exercise of judgment by the officers? Under New York case law, even if there had been a false report, which we do not concede that there was here because there was not a false report. If you look at the complaint that was filed with the DA's office, and it's in the record—I believe it's at 415 and 416 in the record. What Mr. Burnett said was that he saw— Hypothetically speaking, if it were false, let's just assume for purposes of the dialogue between you and me that the report was false. If the report were false, Your Honor, under New York law, there still would not be— the making of a false report does not lead to a malicious prosecution claim against a civilian defendant, not under New York State tort law. And here, like I said— So your answer to my question is that for these purposes, a knowing false report is privileged? No, Your Honor. I don't mean to imply that, and I don't mean to be flip. A civilian is free to make a report to the police. The police are then free to exercise their professional judgment and do what they need to do to prosecute their duties as members of the police force. But the civilians didn't arrest him. The police officers did. The civilians' reporting of a false statement to the officer doesn't then effectuate the arrest. They don't acquire a liability for the false arrest. Correct. Correct. And here, the report simply was that Mr. Shen was swinging his arms and kicking his head. They may have committed a crime by falsely reporting an incident. I'm sorry, Your Honor. Now, as to the affidavits, I don't think we have to presume that what your client said was untrue on a motion for summary judgment. We have to presume it's untrue if it's contradicted by the plaintiff, but we don't have to presume it's untrue if it's not contradicted by the plaintiff, do we? Correct. Right. We only give the plaintiff on a motion by summary judgment by defendants the presumption of every possible inference from their affidavits, correct? Absolutely correct. And the record has several photographs that show what was occurring that day. There's the testimony, Your Honor. There's the other issue that one of the elements requires malice to be shown. And again, this is not an argument that was raised by the plaintiff to show malice. This was raised on their reply brief with a completely new reason that had never been raised in the court below and wasn't raised in their opening brief. So, again, on the elements, what we're examining, plaintiffs failed to raise any issue of fact in opposition. If the Court doesn't have any other questions? Thank you. Thank you. Mr. Dershowitz, you have a couple more minutes. Quickly. Judge Wexler, if you look on pages 28— Wesley. Wesley, I'm sorry. It's okay. I apologize. That's okay. I'm from upstate. You wouldn't know me anyway. Go ahead. In any event, on pages 28 and 29 of our brief, we cite to an eastern district case, an eastern—another eastern— I've read those cases. That's why I asked you about them. None of them are double handcuffed. No, that's correct. Okay. Fair enough. And as I said, you don't have to have one. And the Supreme Court has made it clear that you cannot—you don't have to find a case directly on point. Okay. It's a principle. Also, with respect, if you look at page 39 of our brief, there are cases that we cite that specifically contradict the assertion that was made, and that is that you—for purposes of summary judgment and in general, if you have a knowingly false statement being made, that—and that is— what you had here is he went to the precinct. Shapiro went to the precinct afterwards. He then went down to the district attorney's office afterwards and repeated the same lies. Now, what has happened here— Is the argument really, though, that Shapiro should have been arrested, too? No. I mean, if you look at the photographs, which you can't dispute, there's a fight between the two of them. You know, your client's kicking him at one point. There's blows being exchanged. I mean, how do you dispute that there was probable cause for your client to be arrested? Isn't this really Shapiro should have been arrested, too? Let's start with the simple proposition, yes, he should have been arrested, too. But the answer is that doesn't deal with the question as to what do you do, what are the police supposed to do when they arrive on a scene, one man is deeply injured, a witness comes up and says you arrested the wrong man. Why don't you ask the witness? Don't you have an obligation, a simple obligation, to ask a disinterested witness when you don't know what happened as to what they should do? I say that's a prerequisite. I say when you do not see what happened, to simply take the word of one and not the other is grossly improper. Let me just add one quick fact, and that is throughout this proceeding, they've ignored the testimony and the affidavit submitted by Mr. Shen. When they say it's not contested, a suggestion, Your Honor, in response to your suggestion, yes, if it's not contested, but it was contested through the affidavit, it was contested through the testimony, that's enough for purposes of summary judgment. Thank you. Thank you very much.